# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| LATONYA REYNOLDS COX, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 2:17-cv-01603-SGC |
| SOCIAL SECURITY ADMINISTRATION, Commissioner, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION[1]

Plaintiff Latonya Reynolds Cox appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). (Doc. 1). Plaintiff timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3). For the reasons stated below, the Commissioner's decision is due to be affirmed.

## I. FACTS, FRAMEWORK, AND PROCEDURAL HISTORY

Plaintiff was fifty-five at the time of the Administrative Law Judge's ("ALJ's") decision. (*See* R. 24). Plaintiff has a master's degree and is able to

---

[1] The parties have consented to magistrate judge jurisdiction pursuant to 28 U.S.C. § 636(c). (Doc. 6).

communicate in English. (*Id.*). Plaintiff's past employment experience includes work as social worker. (R. 69). Plaintiff alleged disability due to headaches, back pain, hypertension, and anxiety. (R. 204).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *Doughty v. Apfel,* 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination whether the claimant is performing substantial gainful activity ("SGA"). 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is engaged in SGA, he or she is not disabled and the evaluation stops. *Id*. If the claimant is not engaged in SGA, the Commissioner proceeds to consider the combined effects of all the claimant's physical and mental impairments. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet durational requirements before a claimant will be found disabled. *Id*. The decision depends on the medical evidence in the record. *See Hart v. Finch,* 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, at which the Commissioner determines whether the claimant's impairments meet the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the impairments fall within this category, the claimant will be

2

found disabled without further consideration. *Id.* If the impairments do not fall within the listings, the Commissioner determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

At step four the Commissioner determines whether the impairments prevent the claimant from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, he or she is not disabled, and the evaluation stops. *Id.* If the claimant cannot perform past relevant work, the analysis proceeds to the fifth step, at which the Commissioner considers the claimant's RFC, as well as the claimant's age, education, and past work experience to determine whether he or she can perform other work. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If the claimant can do other work, he or she is not disabled. *Id.*

Applying the sequential evaluation process, the ALJ found Plaintiff had not engaged in SGA since the alleged onset of her disability. (R. 14). At step two, the ALJ found Plaintiff suffered from the following severe impairments: depression, anxiety, and schizoaffective disorder. (*Id.*).

At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments meeting or medically equaling any of the listed impairments. (R. 19-21). Before proceeding to step four, the ALJ determined

Plaintiff had the RFC to perform the full range of work with the following non-exertional limitations:

> the claimant is limited to simple, repetitive, non-complex job tasks; and no more than occasional contact or close proximity to co-workers and supervisors.

(R. 21).

At step four, the ALJ determined Plaintiff was unable to perform her past relevant work. (R. 24). Because Plaintiff's RFC did not allow her to return to her past work, the ALJ relied on the testimony of a vocational expert ("VE") to find a significant number of jobs in the national economy Plaintiff could perform. (R. 24-5). The ALJ concluded by finding Plaintiff was not disabled. (R. 26).

## II. STANDARD OF REVIEW

A court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied. *See Stone v. Comm'r of Soc. Sec.*, 544 F. App'x 839, 841 (11th Cir. 2013) (citing *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)). A court gives deference to the factual findings of the Commissioner, provided those findings are supported by substantial evidence, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).

Nonetheless, a court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004)). "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). Indeed, even if a court finds that the proof preponderates against the Commissioner's decision, it must affirm if the decision is supported by substantial evidence. *Miles*, 84 F.3d at 1400 (citing *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

No decision is automatic, for "despite th[e] deferential standard [for review of claims], it is imperative that th[is] Court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987) (citing *Arnold v. Heckler*, 732 F.2d 881, 883 (11th Cir. 1984)). Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III. DISCUSSION

Plaintiff's appeal focuses exclusively on the evaluation of her psychological impairments; she does not take issue with the determination that her physical impairments were not severe, either individually or in combination. (Doc. 8). After review of the record, the undersigned concludes the Commissioner's decision in this regard was appropriate. Accordingly, further discussion of Plaintiff's physical impairments is not warranted. As to psychological impairments, Plaintiff appeals on two grounds: (1) the ALJ failed to properly consider the opinions of Plaintiff's treating psychiatrist and treating psychologist; and (2) the ALJ failed to properly evaluate or explain the weight given to evidence generated during a consultative examination. These arguments are addressed in turn, after summarizing the relevant portions of the record.

In 2014, after twenty-two years of employment with UAB as a social worker, Plaintiff began to experience problems performing her job; her supervisors recommended she take medical leave to address her psychiatric condition. (R. 53-54, 61-62). Plaintiff took medical leave and was admitted to Brookwood Medical Center on February 5, 2014, due to "escalating agitation, irritability, distress, and anxiety." (R. 349). Plaintiff's mood was "very sad," and she had poor insight and judgment. (R. 350). Plaintiff was diagnosed as suffering from major depressive disorder with psychotic features. (R. 349). Plaintiff's condition improved with

medication, and after nearly two weeks of inpatient care, she was released for outpatient care on February 18, 2014. (*Id.*). At discharge, Plaintiff was stable; her prognosis was "guarded." (*Id.*).

At the beginning of her outpatient care at Brookwood, Plaintiff had worsening paranoia, anxiety, agitation, delusions, and ideas of reference. (R. 329-330, 341). Plaintiff's initial Global Assessment of Functioning ("GAF") was rated at 5,[2] and she was diagnosed with psychosis NOS and recurrent major depression with severe psychotic features. (R. 341). On March 12, 2014, Plaintiff was assessed as having a GAF of 36. (R. 336).

On April 15, 2014, Plaintiff began visiting Grayson and Associates, P.C., for psychiatric and psychological treatment. An initial assessment by her psychiatrist, Shawn Harvey, M.D., yielded a diagnosis of schizoaffective disorder; her GAF was assessed at 35. (R. 382-83). A month later, Plaintiff reported to Dr. Harvey that she was taking computer classes, had joined a library club, and planned to start taking yoga classes. (R. 380). Beginning on May 19, 2014, Plaintiff began treatment with by Dana Ross, Ph.D., a psychologist at Grayson and Associates.

---

[2] GAF scores measure how a person's mental illness affect their daily life on a 100 point scale. A GAF score of 5 indicates a patient is suffering profound impacts from mental illness; they may present a danger to themselves or others and may be unable to maintain personal hygiene. *DSM-IV-TR* at 34. A GAF score represents a clinician's judgment about the severity of an individual's symptoms at a particular moment in time: a snapshot as opposed to a longitudinal study. *See Thornton v. Comm'r Soc. Sec. Admin.*, 597 F. App'x 604, 613 (11th Cir. 2015). A GAF score is not an assessment of a claimant's ability to work. *See id.*; *Davis v Astrue*, No. 11-2542-RDP, 2012 WL 4339562, at *7 (N.D. Ala. Sept. 17, 2012).

(R. 390). By June 3, 2014, Plaintiff reported she was doing better, crying less, eating more often, sleeping somewhat better, and leaving the house for yoga, visits with her sister, and family gatherings. (*Id.*). On June 17, 2014, Plaintiff stated she was exercising regularly, socializing more often, and crying less, although her appetite was poor. (R. 389). Plaintiff and Dr. Ross discussed Plaintiff's transition from work to retirement and Plaintiff's upcoming plans. (*Id.*). This is the last treatment appointment with Dr. Ross appearing in the record. The record includes three documents in which Dr. Harvey expressed opinions regarding Plaintiff's psychiatric impairments and resulting limitations. Dr. Harvey's opinions will be discussed in more detail, below.

Other treatment notes in the medical record touch on Plaintiff's psychiatric condition over time. On April 23, 2015, Plaintiff visited Anisa S. Ssengoba-Ubogu, M.D., for an annual exam. (R. 475). Plaintiff reported recent changes to her psychiatric prescriptions and that she was "doing well." (*Id.*). Dr. Ssengoba-Ubogu noted Plaintiff was cooperative and demonstrated appropriate mood and affect. (R. 478). Plaintiff returned to Dr. Ssengoba-Ubogu for regular checkups and follow-up appointments. (R. 475-94). During an April 24, 2016 appointment, Plaintiff complained of stress that day but did not complain of other psychiatric issues. (R. 490). The treatment note from this appointment describes Plaintiff's past psychiatric diagnosis as "major depressive disorder, single episode, severe

with psychotic features;" it also notes this condition was stable and that Plaintiff reported "no current issues" and reflects Dr. Ssengoba-Ubogu's instructions to continue with medication management. (R. 493).

Also appearing in the record is the July 5, 2014 consultative examination completed by Sharon Waltz, Psy. D. (R. 399-402). Dr. Waltz found Plaintiff had a depressed mood but noted her attention and concentration were adequate. (R. 400). Testing revealed Plaintiff could: (1) count backward from 20; (2) spell the word "world" backward; (3) recall three out of three objects on immediate recall and after five minutes; and (4) recite six digits forward and four digits backward. Plaintiff denied memory problems and exhibited no loose associations or tangential/circumstantial thinking. (R. 400-01). Dr. Waltz found Plaintiff had fair "judgment with regard to social, family, education, and future plans" and assessed a GAF of 60.[3] (R. 401). As discussed in more detail below, Dr. Waltz opined Plaintiff suffered from moderate to severe mental impairment, posing moderate to severe limitations on her ability to perform a variety of work-related tasks. (R. 401-02).

The record also includes information about Plaintiff's activities of daily living. Plaintiff reported she prepared meals, cleaned, did laundry, drove a car,

---

[3] A GAF of 51-60 indicates the patient is experiencing moderate symptoms and functional limitations. *DSM-IV-TR* at 34. A GAF of 61-70 indicates mild symptoms and some difficulties in functioning. *Id*.

could leave the house by herself, went shopping, could handle money and finances, and spent time with family outside of the home. (R. 225-27). Plaintiff also reported she enjoyed cooking and baking and went to water aerobics and yoga twice a week; she reported yoga and aerobics improved her mood "significantly." (R. 392-93). During her consultative examination with Dr. Waltz, Plaintiff reported driving, cooking, cleaning, and doing laundry. (R. 401). Dr. Waltz also noted Plaintiff's report that her typical day involved staying home, taking walks, or going to the YMCA. (*Id.*).

### A. <u>Opinions of Treating Physicians</u>

Absent a showing of good cause to the contrary, the opinion of a claimant's treating physician is entitled to substantial or considerable weight. *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). Failure to articulate the reasons for giving less weight to the opinion of a treating physician is reversible error. *Id.* Good cause exists where a treating physician's opinion: (1) is not supported by the evidence; (2) is contradicted by the evidence; or (3) is conclusory or inconsistent with the doctor's own medical records. *Phillips*, 357 F.3d at 1240-41. While the ALJ can "reject the opinion of any physician when the evidence supports a contrary conclusion. . . . The ALJ is required [] to state with particularity the weight he gives to different medical opinions and the reasons why." *McCloud v. Barnhart*, 166 F. App'x 410, 418-19 (11th Cir. 2006) (citing *Bloodsworth v.*

*Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983); *Sharfarz v. Bowen*, 825 F.2d 278, 279 (11th Cir. 1987)). Furthermore, the ALJ must explain why an opinion is inconsistent with the medical record; he or she cannot simply make a conclusory pronouncement that the opinion is inconsistent with evidence of record. *See Bell v. Colvin*, No. 15-0743, 2016 WL 6609187 at *4 (M.D. Ala. Nov. 7, 2016).

Plaintiff takes issue with the ALJ's treatment of opinions by her treating psychiatrist and treating psychologist, Dr. Harvey and Dr. Ross, respectively. (Doc. 8 at 8-15). As an initial matter, and as noted by the Commissioner, the record does not include an opinion from Dr. Ross. (*See* Doc. 10 at 5, n.2). Instead, the portion of the record the plaintiff cites as Dr. Ross's opinion (R. 454-55) consists of duplicate pages from one of Dr. Harvey's opinions (R. 273-74). (*See* Doc. 8 at 8-9). This confusion may have originated with the ALJ, who also referred to the duplicative pages as constituting Dr. Ross's opinion. (R. 18). There is no opinion from Dr. Ross in the record. Because the ALJ independently addressed Dr. Harvey's opinion, any error on this basis is harmless. *See Graham v. Apfel*, 129 F.3d 1420, 1423 (11th Cir. 1997). Accordingly, further discussion of the opinions of Plaintiff's treating physicians is limited to Dr. Harvey's opinions.

On November 18, 2014, Dr. Harvey completed a Mental Health Provider Report concerning Plaintiff. (R. 447-52). Dr. Harvey reported Plaintiff suffered from schizoaffective disorder and anxiety and opined she was: (1) mildly impaired

in her activities of daily living; (2) markedly impaired in social functioning and concentration; and (3) extremely impaired in her ability to adapt to stress. (R. 450-51). On March 8, 2016, Dr. Harvey completed a second Mental Health Provider Report. (R. 273-75).[4] On the 2016 report, Dr. Harvey noted Plaintiff suffered from schizoaffective disorder and opined she was: (1) mildly impaired in her activities of daily living; (2) moderately impaired in social functioning and concentration; and (3) markedly impaired in her ability to adapt to stress. (R. 274).

Between these two reports, on November 18, 2015, Dr. Harvey completed a supplemental questionnaire concerning Plaintiff. (R. 445-46). In the supplemental questionnaire, Dr. Harvey opined Plaintiff suffered: (1) marked restriction in activities of daily living; and (2) extreme restrictions in social functioning, concentration, and ability to respond to customary work pressures. (R. 445). Dr. Harvey opined these impairments would cause Plaintiff: (1) marked limitation in the ability to understand, carry out, and remember instructions, as well as in the ability to perform simple tasks in a work setting; and (2) extreme limitation in the ability to perform repetitive tasks and to respond appropriately to supervision and coworkers in a work setting. (R. 445-46).

The ALJ accurately described Dr. Harvey's opinions regarding Plaintiff's limitations contained in each of the foregoing reports. (R. 15, 17-18). The ALJ

---

[4] The duplicate of Dr. Harvey's 2016 report is the one misidentified by the ALJ and Plaintiff as Dr. Ross's opinion. (*Compare* R. 454-55 *with* R. 273-74).

found Dr. Harvey's opinions were undermined by Plaintiff's activities of daily living, other medical evidence in the record, and inconsistencies with Dr. Harvey's own records. (R. 23).

Regarding inconsistencies between Dr. Harvey's opinions and his own treatment records, the ALJ's opinion recites Dr. Harvey's May 2014 mental status exam. (*See* R. 15). During that exam, Dr. Harvey found Plaintiff to have a depressed mood and poor insight, but he also noted she: (1) was cooperative; (2) had fair judgment; (3) demonstrated logical thought processes; and (4) possessed intact memory, attention, and concentration. (R. 380-81). The ALJ properly found Dr. Harvey's relatively benign observations undermined his more dire opinions regarding the level of Plaintiff's restrictions. *See Phillips*, 357 F.3d at 1240-41.

The ALJ also noted findings from Dr. Waltz's consultative exam which contradicted the severe limitations described in Dr. Harvey's opinions. (R. 16-17, 23-24). In particular, Dr. Waltz's exam revealed no memory problems, no loose associations, and no tangential or circumstantial thinking. (R. 400-01). Dr. Waltz found Plaintiff's judgment was fair and assessed a GAF of 60. (R. 401). The ALJ properly found Dr. Harvey's opinions regarding Plaintiff's limitations were contradictory to the foregoing observations and findings of Dr. Waltz. *See Phillips*, 357 F.3d at 1240-41.

Likewise, the ALJ noted records from other medical providers which do not support Dr. Harvey's opinions regarding Plaintiff's limitations. (R. 17-18). In particular, the ALJ discussed April 2015 and April 2016 exams in which Dr. Ssengoba-Ubogu noted Plaintiff: (1) was "doing well" with changes to her psychiatric medication; (2) was cooperative; (3) demonstrated appropriate mood and affect; (4) reported stress but did not complain of psychiatric issues; and (5) had a stable psychiatric condition. (R. 17; *see* R. 478, 490, 493). The ALJ did not err in finding Dr. Ssengoba-Ubogu's treatment records undermine Dr. Harvey's opinions.[5] *See Phillips*, 357 F.3d at 1240-41; *see also Chereza v. Comm'r of Soc. Sec.*, 379 F. App'x 934, 940-41 (11th Cir. 2010) (control of mental impairment with medication constituted substantial evidence of non-severity).

Regarding activities of daily living, the ALJ found Dr. Harvey's opinion that Plaintiff had extreme or marked limitations in concentration and/or performing repetitive tasks was undermined by Plaintiff self-reporting the ability to pay bills, count change, handle a savings account, and maintain a checkbook. (R. 23-24). As to Dr. Harvey's opinion that Plaintiff had extreme or marked limitations in social functions, the ALJ found it was undermined by Plaintiff's self-reported activities of going to the store, attending Bible Study, visiting with her sister, and

---

[5] This conclusion is especially true regarding Dr. Ssengoba-Ubogu's April 2016 exam, which occurred approximately six weeks after Dr. Harvey's most recent opinion, provided on March 8, 2016.

attending yoga classes. (*Id.*). Regarding Dr. Harvey's opinion that Plaintiff faced extreme limitations in responding appropriately to co-workers or supervisors, the ALJ noted Plaintiff's earlier function reports did not indicate any problems with concentration or getting along with others. (R. 23). Additionally, the Plaintiff's statements regarding her daily routine directly contradict Dr. Harvey's opinion that she suffered from marked limitations in her daily activities. Plaintiff's statements regarding her capabilities that contradict Dr. Harvey's opinions provided the ALJ good cause to discount those opinions. *Sarria v. Comm'r of Soc. Sec.*, 579 F. App'x 722, 724 (11th Cir. 2014).

All of the foregoing constitutes proper evidence to support the ALJ's decision to give less than full weight to Dr. Harvey's opinion. Accordingly, the ALJ's decision was supported by substantial evidence and applied the proper legal standards in this regard.

### B. Consultative Exam

After performing a consultative exam, Dr. Waltz opined, in part:

> Ms. Cox has mental impairment present to a moderate to severe degree. Her behavior was cooperative. She has no known restriction of activities. She has constriction of interests and difficulties relating to others due to mental health symptoms. Ms. Cox is able to function primarily independently with assistance. Based on the medical findings, Ms. Cox's ability to understand, to carry out and to remember instructions and to respond appropriately to supervision, co-workers and work pressures in a work setting, despite her impairments is moderately to severely impaired.

(R. 401-02). The ALJ afforded Dr. Waltz's opinion partial weight due to its inconsistencies with her own clinical findings and the record as a whole. (R. 24).

Opinions from one-time examiners are not entitled to deference. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987). Accordingly, Dr. Waltz's opinion, based on her single consultative exam, is not entitled to any particular weight. Nevertheless, the ALJ did not err in his assessment of Dr. Waltz's opinion. The inconsistencies with other portions of the medical record, discussed in the preceding section regarding Dr. Harvey's opinion, apply equally to Dr. Waltz's opinion and do not warrant further discussion here.

The ALJ noted Dr. Waltz's conclusion that Plaintiff had adequate attention and concentration, which is inconsistent with her own clinical findings. (R. 16). The ALJ also noted Dr. Waltz's report that Plaintiff denied memory problems, as well as her observations that Plaintiff exhibited: (1) no loose associations or tangential/circumstantial thinking; (2) fair judgment regarding social, family, education, and future plans; and (3) a GAF of 60. (*Id.*). The ALJ did not err in concluding these observations and findings were internally inconsistent with Dr. Waltz's opinion of Plaintiff's significant limitations. For all of the foregoing reasons, the ALJ did not err in assigning partial weight to Dr. Waltz's opinion.

## IV. CONCLUSION

The ALJ discussed Plaintiff's initial major depressive and psychotic episode for which she was hospitalized in February 2014. After a longitudinal review of Plaintiff's medical records following her discharge, the ALJ described her condition and symptoms as steadily improving. (R. 23). After reviewing the medical record, the court agrees with this assessment.

Upon review of the administrative record and considering all of Plaintiff's arguments, the undersigned finds the Commissioner's decision is supported by substantial evidence and is in accord with applicable law. Accordingly, the Commissioner's decision is due to be affirmed. A separate order will be entered.

**DONE** this 26th day of March, 2019.

_Staci G. Cornelius_
STACI G. CORNELIUS
U.S. MAGISTRATE JUDGE